UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ELLEN THOMAS,<br><br>    Plaintiff<br><br>v.<br><br>SMITH'S FOOD & DRUG CENTERS, INC., ABC CORPORATIONS I-X; BLACK AND WHITE COMPANIES I-X; and JOHN DOES I-X, inclusive,<br><br>    Defendants | Case No.: 3:23-cv-00439-ART-CSD<br><br>**Order**<br><br>Re: ECF No. 13 |

Before the court is defendant Smith's Food & Drug Centers, Inc.'s (Smith's) motion to strike/exclude any claim for future damages. (ECF Nos. 13, 13-1 to 13-12.) Plaintiff Ellen Thomas (Thomas) filed a response. (ECF Nos. 18, 18-1 to 18-17.) Smith's filed a reply. (ECF No. 19.)

For the reasons set forth below, Smith's motion is granted in part and denied in part.

**I. BACKGROUND**

Thomas filed a complaint and then an amended complaint for negligence against Smith's in state court based on allegations that she was grocery shopping at Smith's and she slipped and fell on clear gel on the floor while walking to the cashier on December 27, 2020. (ECF No. 1-1.)

Thomas served her initial disclosures on March 1, 2023, which included a computation of damages where future damages were described as "[u]ndetermined at this time." (ECF No. 13-4 at 6.)

Thomas saw Dr. James Lynch, at Swift Institute, on March 8, 2023, for complaints of immediate onset of low back, right lower extremity pain, and right knee pain, following the slip and fall incident at Smith's grocery store in December 2020. Dr. Lynch recommended a bilateral fusion at L4-5 since she had failed conservative treatment measures. (ECF No. 18-6 at 2-4.) Surgery was scheduled for April 27, 2023. (ECF No. 18-8 at 3.) She had a preoperative appointment on April 17, 2023. (ECF No. 18-6 at 11-19.)

On April 24, 2023, Thomas served supplemental disclosures, including a computation of damages where future damages were again described as "[u]ndetermined at this time." Dr. Lynch was not identified as a witness. (ECF No. 13-5 at 7.) That same day, Thomas served responses to requests for admission where she denied that her treating physicians had *not* recommended that she receive any future treatment causally related to the incident at Smith's. (ECF No. 13-9 at 7-8, response to Request No. 24.) Thomas also responded to an interrogatory asking her to describe the nature of the injuries she believed were caused by the incident. She responded that she: "rolled her ankle and tore the meniscus in her right knee ultimately resulting in a medial and lateral meniscectomy surgery." (ECF No. 13-10 at 7, response to Interrogatory No. 13.) Thomas also responded to an interrogatory confirming that she was not making a claim for lost earnings or loss of earning capacity as a result of the Smith's incident. (ECF No. 13-10 at 10-11, response to Interrogatory 20.) In addition, Thomas provided an authorization for release of protected health care information, however, the release did not authorize Smith's counsel to speak directly to Thomas' healthcare professionals. (ECF No. 18-17.)

On August 8, 2023, Thomas served her second supplemental disclosures which included updated medical records from Swift Institute, and a computation of damages where future

damages were again described as "[u]ndetermined at this time." Dr. Lynch was not listed as a witness. (ECF No. 13-6 at 7; ECF No. 18-4.)

Thomas was deposed on August 9, 2023. She confirmed the medical problems she claimed stemmed from the Smith's accident included her left ankle, her low back, and her right knee. (ECF No. 19-2 at 2, depo. p. 109:2-8.) She testified that Dr. Lynch had recommended a fusion surgery at the L4-5 level. (ECF No. 13-12 at 3, depo. p. 99:6-8, 18.) She had planned to have the surgery on April 27, 2023, but she found out that Medicare denied coverage, so she cancelled the surgery because she did not "want to be responsible for over $200,000." (*Id*. p. 99:11-15.) Thomas testified that Dr. Lynch told her that the surgery was needed because of the incident at Smith's. (*Id*. at 99:19-25, 100:1-5, 101:10-14.) She testified that the cyst identified by Dr. Lynch was not there before the incident at Smith's because she had fallen in 1997, and there was no cyst on the MRI done at that time. (*Id*. at 100:6-22.)

Thomas testified that she was planning to have additional treatment to her right knee in the form of either a partial or full knee replacement by Dr. Dirig or Dr. Shields, but she wanted to make sure Medicare would cover the surgery before having it done. (ECF No. 19-3, depo. p. 107:23-25, 108:1-6, 18-25.)

Thomas confirmed in her deposition she was not claiming lost income from the incident. (ECF No. 19-2 at 3, depo. p. 110:1-3.)

Thomas' counsel confirmed to Smith's counsel immediately after Thomas' deposition that Thomas intended to include the back surgery as part of her damages calculation. (Dorin Decl., ECF No. 18-1 at 2 ¶¶ 5-6.) Smith's counsel discussed that he might want to depose

Dr. Dirig and Dr. Lynch, who had both been mentioned at Thomas' deposition, and Thomas' counsel responded that he would contact the doctors for dates, but Smith's counsel did not receive any dates. (Busby Decl., ECF No. 19-1 ¶ 7.)

Smith's removed this action to federal court on September 5, 2023. (ECF No. 1.)

On September 26, 2023, Smith's counsel sent an email to Thomas' counsel about the federal court discovery plan and scheduling order (DPSO), which included the following statement:

> As I'm sure you're aware, federal court has some pretty strict requirements about disclosing future damages. Your prior disclosure statements to not indicate anything about future medical expenses. If your client is in fact claiming expenses for future back surgery and future knee surgery, please make sure those are properly set forth in your federal disclosure statement. Assuming she is claiming future expenses for back surgery, then I would want to depose Dr. Lynch regarding the proposed surgery and causation – unless you plan to use some other expert to establish causation. As to any future knee surgery, I would also like to depose the surgeon – unless you plan to use some other expert to establish causation. At this time, I am unsure whether your client is actually claiming future knee surgery since she has had at least three different opinions from doctors (total knee arthroplasty, partial knee replacement, injections to avoid surgery.) Accordingly, I look forward to receiving your disclosure statement so that I will know who I need to depose.

(ECF No. 18-9 at 2.)

On October 5, 2023, the court entered a DPSO, setting the expert disclosure deadline for January 4, 2024, the rebuttal expert disclosure deadline for February 5, 2024, and the discovery cutoff for March 4, 2024. (ECF No. 10.) The parties agreed to incorporate their prior disclosure statements and supplements made while in state court into the format utilized by the federal court and exchange the same by October 9, 2023. (*Id.*)

On October 9, 2023, Thomas served her initial disclosures pursuant to Federal Rule of Civil Procedure 26, and the computation of damages included future medical expenses with the

4

following description: "**TBD – surgery cost estimates have been requested and will be produced upon receipt.**" (ECF No. 13-7 at 8, emphasis original; ECF No. 18-4.) Dr. Lynch was not identified as a witness.

According to Thomas' counsel, beginning in October 2023, his office repeatedly reached out to Dr. Lynch's office to obtain the exact cost for Thomas' back surgery, but he was informed by Dr. Lynch's office that the exact cost could not be determined because they could not get the codes until the time of the actual surgery. (Dorin Decl., ECF No. 18-1 at 2-3 ¶ 7.)

On January 5, 2024, Thomas served her non-retained expert witness disclosure which included, among other non-retained experts, Dr. Lynch:

> Dr. Lynch provided medical treatment to Plaintiff and will testify in accordance with his medical chart, even if some records contained therein was [sic] prepared by another healthcare provider. He is expected to testify that Plaintiff suffered injuries as a result of the subject incident, including but not limited to cervical radiculopathy, pain of right knee, myofascial pain and required reasonable and necessary medical care as a result of the subject accident at a reasonable cost.

(ECF No. 18-3 at 3.)

On January 16, 2024, Dr. Lynch's office reached out to Thomas' counsel stating that they received a voicemail from Smith's counsel about scheduling Dr. Lynch's deposition. Dr. Lynch's office asked if Thomas' counsel could assist in coordinating the deposition. (ECF No. 18-10 at 2.) Thomas' counsel reached out to Smith's counsel for dates for Dr. Lynch's deposition, but he never received a response. (Wilson Decl., ECF Nos. 18-11 to 18-14.) According to Smith's counsel, he stopped trying to schedule the deposition because Thomas had not included a claim for future back surgery as part of her damages. (Busby Decl., ECF No. 19-1 ¶ 8.)

On March 4, 2024, the day discovery closed, Thomas served supplemental disclosures under Federal Rule of Civil Procedure 26, which included updated medical records from Swift Institute, a Swift Institute Pre-registration for Lumbar 4-5 Transforaminal Lumbar Interbody Fusion dated March 31, 2023, and a computation of damages where future medical expenses were described as "TBD." Dr. Lynch was not identified as a witness. (ECF No. 13-8 at 9; ECF No. 18-7.)

Smith's served an offer of judgment on Thomas on March 8, 2024. (Busby Decl., ECF No. 19-1 ¶ 9.) On March 14, 2024, Thomas' counsel sent Smith's counsel an email stating that he had received Smith's offer of judgment, and he asked whether he was open to mediation. Smith's counsel responded: "Probably. The client is going to insist on you making a demand before we agree." (ECF No. 18-15.)

On March 26, 2024, Thomas' counsel sent Smith's counsel a letter, stating: "Dr. Lynch has opined that Thomas requires a Lumbar 4-5 Transforaminal Lumbar Interbody Fusion with Bilateral Lumbar 4-5 Fusion, Resection Synovial Cyst surgery at a future cost estimate of approximately: **$26,000.00 - $42,000.000** not including post-operative care." (ECF No. 13-11 at 2 ¶ 5.)

Curiously, Thomas' counsel states that he contacted Dr. Lynch's office on *April 5, 2024*, to see if he would be willing to provide an estimated cost range for the back surgery, and received an estimated range of $26,000 to $42,000 on *April 8, 2024*, and disclosed this amount to Smith's counsel on *March 26, 2024*. (Dorin Decl., ECF No. 18-1 at 3 ¶¶ 8-9.) Presumably the April dates are typos since Mr. Dorin could not have received the estimate from Dr. Lynch in April if it was already provided to Smith's counsel on March 26.

6

On April 3, 2024, Smith's filed a motion for summary judgment arguing that Smith's did not have knowledge of the clear gel on the floor that caused Thomas to slip and fall. (ECF No. 12.)

On the same date, Smith's filed this motion to strike/exclude any claim for future damages as future damages were not disclosed under Rule 26. (ECF No. 13.)[1]

## II. DISCUSSION

**A. Rule 26 and Rule 37**

"[A] party must, without awaiting a discovery request, provide to the other parties" certain information, including: the name and contact information of each person likely to have discoverable information and "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of the injuries suffered[.]" Fed. R. Civ. P. 26(a)(1)(A)(i), (iii). "The advisory committee note to Rule 26 describes this last requirement as 'the functional equivalent of a standing Request for Production under Rule 34.'" *R&R Sails, Inc. v. Insurance Company of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citing Fed. R. Civ. P. 26 advisory committee's note to 1993 Amendments).

A party also must supplement or correct its disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

---

[1] In the future, the parties need not attach a pleading or other filing in this case as an exhibit to a motion. It will suffice that the party simply references the docket number.

"A 'major purpose' of the initial disclosure requirements 'is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information.'" *R&R Sails*, 673 F.3d at 1245 quoting Fed. R. Civ. P. 26 advisory committee's notes to 1993 Amendments).

Under Rule 37(c)(1), if a party fails to provide or supplement their disclosures as required by Rule 26, the party may not use the information (or witness), "unless the failure was substantially justified or is harmless." In addition to or instead of precluding use of the information, the court "on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(iv)." Fed. R. Civ. P. 37(c)(1)(A)-(C).

"Rule 37(c)(1) gives teeth to [Rule 26's] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

The moving party bears the initial burden of establishing that the opposing party failed to comply with the disclosure requirements. *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241-242 (D. Nev. 2017). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R&R Sails*, 673 F.3d at 1246 (citing *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008)); *see also Silvagni*, 320 F.R.D. at 241-42.

"While a party may not have all of the information necessary to provide a computation of damages early in the case, it has a duty [as the case progresses] to diligently obtain the necessary information and prepare and provide its damages computation within the discovery period."

*Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011) (citation omitted). "The plaintiff cannot shift to the defendant the burden of attempting to determine the amount of the plaintiff's alleged damages." *Id.* (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294-95 (2d Cir. 2006)).

**B. Thomas Failed to Timely Disclose Future Damages**

The court finds that Thomas failed to timely disclose her future damages, of which there appear to be three components at issue: medical expenses for future surgery to her right knee, medical expenses for future back surgery, and future lost earnings.

Despite testifying in her deposition that she expects to have a future surgery on her right knee, Thomas has not made *any* disclosure concerning future medical expenses with respect to her right knee. In addition, Thomas' deposition testimony and discovery responses confirm that she is not seeking lost future earnings, and none were disclosed pursuant to Federal Rule of Civil Procedure 26.

With respect to future medical expenses for her back surgery, Dr. Lynch recommended that Thomas undergo surgery in early March 2023. In her supplemental disclosures in April and August 2023, Thomas still described her future damages as undetermined and Dr. Lynch was not identified as a witness. At her August 9, 2023 deposition, Thomas confirmed that Dr. Lynch had recommended back surgery that she attributed to this incident, and Thomas' counsel represents that he confirmed to defense counsel that day that Thomas intended to seek the cost of the back surgery as damages.

Shortly after this matter was removed to federal court, defense counsel sent Thomas' counsel correspondence specifically pointing out that Thomas' disclosure statements did not indicate anything about future medical expenses. Defense counsel asked Thomas' counsel to

clarify whether she was seeking future damages for her back surgery as well as for right knee surgery and to update her disclosures so Smith's would know who it needed to depose. Thomas served her initial disclosures under Federal Rule of Civil Procedure 26 on October 9, 2023, and future medical expenses were described as "TBD" as surgery cost estimates were being requested and would be provided on receipt. In October 2023, Thomas' counsel began reaching out to Dr. Lynch's office, but he was told that he could not provide the exact cost of the surgery because the codes could not be determined until the time of surgery.

On January 5, 2024, Thomas disclosed Dr. Lynch as a non-retained expert witness, but Dr. Lynch had still not been identified in her Rule 26 disclosures, and the damages computation was not updated, even though it had been nine months since Dr. Lynch recommended the back surgery. There were communications about deposing Dr. Lynch, but ultimately defense counsel elected not to because Thomas had not identified the future medical expenses for the back surgery in her disclosures.

Discovery closed on March 4, 2024, and Thomas served supplemental disclosures which included a pre-registration document concerning Thomas' back surgery dated March 31, 2023, but future medical expenses were still described as "TBD." It wasn't until after being served with an offer of judgment, and after discovery closed, that Thomas' counsel pressed Dr. Lynch for an estimate of the cost of the back surgery and provided this estimate to defense counsel.

Thomas acknowledges that as a result of an oversight, Dr. Lynch was not identified as a witness in her state or federal disclosures, yet Thomas still has yet to serve disclosures identifying Dr. Lynch as a witness or providing the surgery estimate.

///

///

**C. Are the failures to disclose substantially justified or harmless?**

"Rule 37(c)(1) does not require the court, in all instances, to exclude evidence as a sanction for a late disclosure that is neither justified nor harmless." *Jackson*, 278 F.R.D. at 594 (citation omitted). In deciding whether to impose Rule 37(c)(1)'s sanction of preclusion, the court may consider various factors, including: (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions. *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).

"Courts are more likely to exclude damages evidence when a party first discloses its computation of damages shortly before trial or substantially after discover has closed." *Jackson*, 278 F.R.D. at 594 (citations omitted).

For the reasons explained below, the court finds that the failure to supplement her disclosures was harmless with respect to future medical expenses concerning Thomas' recommended back surgery. However, Thomas has not demonstrated that the failure to disclose future medical expenses with respect to her right knee was either substantially justified or harmless. Finally, Thomas does not appear to dispute that she should be precluded from seeking future damages for lost earnings.

**1. Medical Expenses for Future Back Surgery**

Ultimately, the court finds the failure to formally disclose Dr. Lynch as a witness and her estimate of future medical expenses for the recommended back surgery is harmless under the circumstances.

Thomas should have disclosed Dr. Lynch as a witness in her disclosures after she saw him in March 2023, and she could have pressed Dr. Lynch for an estimate of her future back

surgery costs earlier. Nevertheless, while not provided in the form of a disclosure, Thomas did notify defense counsel of the estimate for her future back surgery in writing, and this was done only a few weeks after discovery closed. There is still a pending motion for summary judgment that is not based on Thomas' future back surgery expenses. The joint pre-trial order is not yet due, and no trial date has been set. Accordingly, it is unlikely that the late disclosure will delay this case, and there is no discernable impact on the public's interest in expeditious resolution of litigation or the court's need to manage its docket.

Smith's argues that it will be prejudiced if Thomas is allowed to present evidence of future damages. For the following reasons, the court finds that any prejudice to Smith's will be minimal and is outweighed by the other factors.

First, the court finds that while not made in a formal disclosure, Dr. Lynch's identity and the fact that Thomas was claiming the future back surgery cost as part of her damages was known to Smith's. Thomas and her counsel confirmed as much at her deposition back in August 2023. Dr. Lynch's records were disclosed to Smith's, and Thomas designated Dr. Lynch as a non-retained expert witness in January 2024. What is more, Smith's reached out to Dr. Lynch's office to schedule his deposition, only to subsequently make a tactical decision not to do so. That is Smith's prerogative, but it cannot now claim that it knew nothing about Dr. Lynch or Thomas' claim for future medical expenses related to the recommended back surgery.

Smith's also argues that it will be prejudiced because Dr. Lynch was not disclosed as opinion on causation, but the designation specifically states that Dr. Lynch "is expected to testify that Plaintiff suffered injuries *as a result of the subject incident*[.]"

Smith's claims that allowing Thomas to present evidence of future damages related to her back surgery will prejudice it because discovery will need to be reopened and it will be forced to incur significant additional expense.

The court acknowledges that allowing Thomas to present this evidence will require a limited re-opening of discovery so that Smith's can depose Dr. Lynch and have its expert(s) review his testimony. While this will certainly result in additional expense to Smith's, it undoubtedly anticipated this expense when it initially reached out to schedule Dr. Lynch's deposition.

Smith's further contends that it will need to obtain additional medical records, but the court find that Smith's is not actually prejudiced in this regard because updated medical records from Swift—where Dr. Lynch works—were disclosed and provided to Smith's. Moreover, Thomas provided a release for Smith's to obtain those records or records from other providers on its own. Smith's argues that the release did not allow it to personally contact Thomas' medical providers. The release did not authorize Smith's to speak directly to Thomas' healthcare professionals, but it did not preclude Smith's from subpoenaing Thomas' medical records. Smith's also states that it will need to obtain Thomas' records concerning a prior fall that Thomas testified to in her deposition. Again, Smith's could have propounded additional written discovery about the prior fall and requested or subpoenaed any relevant records after Thomas testified to the event in August 2023.

Smith's also argues that it would have had a different litigation strategy had it known Thomas was claiming future medical expenses. As discussed above, Thomas and her counsel confirmed at her deposition that Thomas intended to seek medical expenses for the back surgery as damages, and she disclosed Dr. Lynch as a non-retained expert. While she did not formally

disclose Dr. Lynch or the estimate of these damages in her Rule 26 disclosures, Thomas did disclose her medical records from Dr. Lynch which put Smith's on notice that he had recommended a back surgery. Therefore, it is disingenuous for Smith's to now claim it would have operated under an entirely different strategy.

Smith's states that it would have to re-depose Thomas and ask her questions about this "unknown treatment," but she was asked specific questions about the recommended surgery at her August 9, 2023 deposition. Smith's also indicates it would need to serve additional written discovery, but it does not indicate what discovery would be required or what information it expects to elicit. The facts are fairly clear, and Dr. Lynch's records speak for themselves regarding the scope of the recommended procedure. The court will permit Smith's to depose Dr. Lynch to ask him any relevant questions, and allow Smith's an opportunity to have its expert(s) review the records and testimony.

Finally, the public policy favoring disposing of cases on their merits weighs against exclusion of this evidence.

**2. Medical Expenses for Future Right Knee Surgery**

While Thomas testified at her deposition on August 9, 2023, that she anticipated needing to have a future knee surgery, Thomas has not supplemented her disclosures or otherwise communicated to defense counsel that she in fact intends to see costs of any future knee surgery as part of her damages. In fact, her response to Smith's motion does not mention future knee surgery. Therefore, Thomas has not demonstrated that the failure to disclose medical expenses for any future knee surgery was either substantially justified or harmless, and Smith's motion will be granted with respect to any future medical expenses for knee surgery.

/ / /

### 3. Future Lost Earnings

Thomas never supplemented her disclosures to indicate she was seeking any lost future earnings as a result of this incident, and she indicated in her deposition and in responses to discovery that she was not seeking such damages. Therefore, Smith's motion will be granted insofar as Thomas is precluded from seeking damages for future lost earnings at trial.

### III. CONCLUSION

Smith's motion (ECF No. 13) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** insofar as Thomas is precluding from presenting evidence of future damages related to her right knee and related to lost future earnings. The motion is **DENIED** with respect to future damages for Thomas' back surgery. The parties shall meet and confer to come up with a schedule for the limited re-opening of discovery so that Smith's may depose Dr. Lynch and have its expert(s) review Dr. Lynch's records and testimony, and file a stipulation on or before **May 20, 2024**. If the parties cannot agree on a schedule for the limited re-opening of discovery, they shall file a notice with the court by **May 20, 2024**, and the court will set the schedule.

**IT IS SO ORDERED**.

Dated: May 14, 2024

Craig S. Denney
United States Magistrate Judge